This action was brought to collect from the defendant, a stockholder of The Empire Planing and Moulding Mill Company, a corporation organized under chap. 40, Laws of 1848, page 54, a debt contracted by the corporation, under the provisions of section 10, of the act. That section provides that all the stockholders of every company incorporated under the act, shall be severally, individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of capital fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made and recorded as prescribed in section 11, of the act, and that the capital stock so fixed and limited, shall all be paid in, one-half thereof within one year, and the other half thereof within two years from the incorporation of said company, or such corporation shall be dissolved. Section 14, of the act provides that nothing but money shall be considered as payment of any part of the capital stock, and that no loan of money shall be made by *Page 230 
any such company to any stockholder therein, and that if any such loan shall be made to a stockholder, the officers who shall make it, or who shall assent thereto, shall be jointly and severally liable to the extent of such loan and interest, for all the debts of the company contracted before the repayment of the sum so loaned. It will thus be seen that care was taken to provide security to all the creditors of any corporation organized under the act, to the full extent of its capital stock, by making such stockholder personally liable to the amount of stock held by him, to such creditors, until the entire amount of the capital stock of the company, was paid in cash to the company, and a certificate of such payment made and recorded as required by the act, and providing that the officers of the company making or assenting to any loan of its money to any stockholders, should be personally liable for all the debts of the company contracted, before such loan shall be paid. The article was amended by chapter 333, Laws of 1853, page 705, section 2, of which provides: "That the trustees of such company may purchase mines, manufactories, and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be declared and taken to be full paid stocks, and not liable to any further calls, neither shall the holders thereof be liable for any further payments under the provisions of the tenth section of said act, but in all statements and reports of the company to be published, this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect according to the fact. In Schenck v. Andrews (not reported) it was held by this court that this amendment included the original capital stock of the company, as well as any increase thereof made pursuant to the act of 1848, and that the holder of such stock was relieved from the liability to creditors imposed by section 10 of the act of 1848 to the same extent as though the entire capital stock had been paid in cash to the company. In the present case the entire stock of the company was fixed and limited at $100,000, all *Page 231 
of which was issued to the defendant as full paid stock in payment for property purchased of him by the company. The defendant was president and the principal man of the company. The certificate, filed and recorded, states, in substance, that the amount of the capital of the company was fixed at $100,000; that pursuant to a motion of the board of trustees of said company, the steam engine, etc., describing the property, was purchased of Elias T. Hatch for 200 shares of the capital stock of said company, and said company was authorized to issue full paid stock therefor; that the whole amount of the capital stock of said company, 200 shares, was issued to said Elias T. Hatch for said personal property, and the same was issued and delivered to him as full paid stock. It will be seen that this certificate is wholly silent as to the value of the property. It would be equally true whether the property purchased of the defendant was worth only $1,000 or $100,000, the price paid for it. The certificate, therefore, failed to show that the stock was issued to the defendant pursuant to the provisions of section 2 of the act of 1853, as that section only authorizes the issue of stock in payment of property necessary for the business of the company to the value of the property purchased. This shows that the legislature did not design by that amendment to impair the security of creditors, but only to substitute as such security property necessary for the transaction of its business at its value in lieu of cash actually paid to the company for its stock, which cash it would be necessary for the company to invest in such property. This is the only change effected by section 2 of the act of 1853. Under this section full paid stock can be issued in payment for property at its value. The price agreed by the company to be paid for the property is only prima facie
evidence at most of its value in favor of the stockholder; and when it appears, as the evidence tends to show in the present case, that such price was more than twice the actual value of the property, the agreement of the company to pay such excessive price is no shield to the holder of stock issued in payment for property at such excessive price from *Page 232 
the liability imposed by the tenth section of the act of 1848. Were it otherwise the amendment of 1853 would enable parties so disposed to practice the grossest frauds upon creditors and purchasers of the stock issued in payment of property purchased at fictitious prices by the company. Creditors have the right under the statute to rely upon the fact that the corporators have invested the full amount of the capital stock of the company in the business, and that such amount has been paid to the company either in cash or property necessary to the business of the company at its value. This fund the law provides as security for the creditors of the company. If the corporation fails to provide this fund, as the statute requires, its stockholders are liable personally to its creditors for an amount equal to the stock held by them respectively, by virtue of the tenth section of the act of 1848. It is insisted by the counsel for the defendant that in order to make the defendant liable, it was incumbent upon the plaintiffs to show fraud in the purchase of the property by the corporation of the defendant, and that there being no such charge in the complaint it was not competent for the plaintiffs to show it upon the trial. It would be a sufficient answer to this position that no such question was raised upon the trial. But the complaint was sufficient. It charged in substance that the defendant was the owner of stock of a specified amount. That the capital stock of the corporation had not all been paid in, and a certificate of such payment made and recorded as required by the statute. This was all that was necessary to enable the plaintiffs to prove that such stock had not all been paid in, either in cash, as required by the act of 1848, or in property at its value, as required by the act of 1853. The plaintiffs did prove that it had not been so paid, and their evidence tended strongly to show that the property purchased of the defendant was worth only forty per cent of the price paid for it. The referee erred in holding this evidence immaterial, and refusing to pass upon the question as to the value of the property. It is insisted by the learned judge, who gave a dissenting opinion at the *Page 233 
General Term, that this rule will prevent sales of stock by its holders, as the purchasers, to protect themselves from liability for the debts of the corporation, will be bound to prove that the property, purchased in payment for which the stock was issued, was worth the amount of the stock so issued. The answer to this is, that the statute provides for legitimate business enterprises, and not for the sale of the stock of fraudulent corporations. Had the latter been the design, the statute should have read; to issue stock in payment to the amount agreed to be paid for the property instead of to the value of the property. The General Term was right in reversing the judgment entered upon the report of the referee, and the order granting a new trial must be affirmed, and judgment given for the plaintiffs for the amount of their debt against the corporation with costs.
CHURCH, Ch. J., and RAPALLO, J., concur, for reasons assigned in opinion of ALLEN, J.
PECKHAM and FOLGER, JJ., concur, for reasons assigned in opinion of GROVER, J.
Judgment affirmed.